IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHERI L. BROWN,  :
　:
　　Plaintiff,  :
　:
vs.  :
　:  CIVIL ACTION 14-0164-M
CAROLYN W. COLVIN,  :
Social Security Commissioner,  :
　:
　　Defendant.  :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19). Oral argument was waived in this action (Doc. 20). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

1

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Brown was forty-eight years old, had completed a high school education (Tr. 52), and had previous work experience as a cashier and waitress (Tr. 97). In claiming benefits, Plaintiff alleges disability due to degenerative disk disease in the cervical and lumbar spine; cervical spondylosis; tension headaches; depression with generalized anxiety; mood disorder due to general medical condition (reported chronic pain); opioid dependence (iatrogenic); alcohol dependence (partial remission); and history of delirium secondary to benzodiazepine and opioid withdrawal (Doc. 13 Fact Sheet).

The Plaintiff filed a protective application for SSI on February 24, 2011 (Tr. 168-75; *see also* Tr. 25). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that if Brown stopped her substance abuse, she would be capable of performing specific jobs (Tr. 25-54).

2

Plaintiff requested review of the hearing decision (Tr. 18) by the Appeals Council, but it was denied (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Brown alleges the single claim that the ALJ improperly determined that she would not be disabled if she discontinued her drug use (Doc. 13). Defendant has responded to—and denies—this claim (Doc. 14).

The Court notes, at the outset of this discussion, that the Contract with America Advancement Act of 1996 modified the Social Security laws to "preclude the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled." *Doughty v. Apfel*, 245 F.3d 1274, 1275 (11th Cir. 2001); *see* 42 U.S.C. § 423(d)(2)(C) (1997). The *Doughty* Court held that the claimant "bears the burden of proving whether [she] would be disabled if [s]he stopped using drugs or alcohol." *Doughty*, 245 F.3d at 1275-76. Under the social security regulations, an ALJ who has determined that a claimant is disabled and suffers drug addiction or alcoholism must then "determine whether [the] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a) (2006). In reaching this determination, "[t]he key factor . . . is whether the claimant

3

would still be found disabled if he stopped using drugs or alcohol." *Doughty*, 245 F.3d at 1279 (citing 20 C.F.R. § 404.1535(b)(1)).

In his decision, the ALJ determined that Brown met the requirements for Disability Listings 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders), and 12.09 (Substance Addition Disorders) (Tr. 31). After summarizing the record evidence relative to Plaintiff's use of medications and alcohol and stating what weight he gave that evidence (Tr. 32-36), the ALJ concluded that if Brown "stopped her substance abuse, she would no longer have an impairment or combination of impairments that meets or medically equals" all of the requirements for any Listing (Tr. 37). The ALJ went on to find that Brown would "have the residual functional capacity to perform light work . . . with certain non-exertional restrictions;" those restrictions were specifically set out by the ALJ (Tr. 38-39). The ALJ then summarized the balance of the evidence and explained what weight he gave it (Tr. 41-51). After determining that Plaintiff was not capable of returning to her past relevant work, even if she stopped her substance abuse (Tr. 51), the ALJ credited the testimony of a Vocational Expert to conclude that there were specific jobs that Brown could perform (Tr. 52-53).

In bringing this action, Brown admits that although she may

4

be "physically dependent on [her] medications," "there is no evidence in the file that [she] was taking her prescription medication in any fashion other than it was prescribed" (Doc. 13, p. 3). The Court notes that Defendant admits that "drug and alcohol abuse does not include '[a]ddiction to, or use of, prescription medications taken as prescribed, including methadone and narcotic pain medications'" (Doc. 14, p. 9) (*quoting* Social Security Ruling 13-2p, 2013 WL 621536, at *3) (emphasis added by Defendant). However, the Government argues that Brown was not taking her medications as prescribed (Doc. 14, pp. 9-10).

In his opinion, the ALJ noted that the medical records reported Plaintiff's overmedication and the need to decrease the amount of prescription drugs that she was taking (Tr. 36). Specifically, on October 1, 2010, Dr. Robert Calin, at Springhill Medical Center, stated the following in setting out Brown's plan of treatment: "She is stable on her present medications. We are going to assume those. We are going to try to taper down off the methadone, Lortab-Soma combination as we feel she is overmedicated" (Tr. 258). On June 7, 2012, Brown was admitted to Providence Hospital following an accidental overdose of "a whole slew of narcotics and centrally acting drugs including methadone, Trileptal, diazepam, and oxycodone in large doses. She came in after being found unresponsive by

5

friends;" "she was basically comatose on admission" (Tr. 405; Tr. 406; *see generally* Tr. 405-34). The first of several discharge diagnoses for that hospitalization was iatrogenic[1] overdose (Tr. 406). Examination notes from Altapointe Health Systems report that, several days after her medication overdose discharge, Brown was experiencing "[p]aranoia (believes there are news people outside her bathroom window 'they're out to get me'; visual hallucinations (believes she sees other people in the house; not sleeping due to being scared of what's going on around her and fears having another seizure withdrawing from Methadone, benzo's" (Tr. 460). Altapointe's one treatment plan short term goal was for Plaintiff to "reduce dependence on and abuse of pain medications from daily to no abuse for three months as evidenced by integrating and implement [sic] new mental, somatic, and behavioral ways of managing pain (*e.g.*, relaxation, distraction, activity scheduling) and only taking medications as prescribed" (Tr. 461). This was to be accomplished by, among other things, medication monitoring (Tr. 462). As found by the ALJ, records several months later noted that Plaintiff had not been weaned from her drugs and had, in fact, taken Haldol after it was discontinued and was receiving "Methadone, Oxycodone, and Soma from her primary care physician"

---

[1]*Iatrogenic effect*, "a Greek term meaning 'brought forth by the healer,' is any consequence of medical treatment or advice to a patient." http://en.wikipedia.org/wiki/Iatrogenesis

6

(Tr. 35; *cf.* Tr. 440, 442).

The ALJ also noted that the medical records reported, at the time of the Altapointe intake assessment, that Plaintiff's "stepdaughter reported that her father now administers the claimant's medications on a daily basis, keeps the rest locked up, and only gives her 60 mg of the 80 mg of Methadone she is prescribed a day" (Tr. 36; *cf.* Tr. 451). The ALJ also noted that Brown had admitted to medical personnel that she had taken more medications than prescribed (Tr. 36; *cf.* Tr. 451). The Court notes that Plaintiff has not offered any rebuttal to these particular findings by the ALJ (*see* Doc. 13).

The Court reiterates that the *Doughty* Court held that the claimant "bears the burden of proving whether [she] would be disabled if [s]he stopped using drugs or alcohol." *Doughty*, 245 F.3d at 1275-76. The Court finds that the ALJ has relied on substantial evidence supporting his conclusion that Brown has an addiction that renders her disabled, but that if she stopped abusing drugs she would, in fact, be able to perform specified jobs. The Court further finds that Plaintiff has not demonstrated that her disability would continue to exist if she followed her prescribed medical regimen.

Brown has raised a single claim in bringing this action. That claim lacks merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable

7

mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 24th day of October, 2014.

s/BERT W. MILLING, JR.<br>
UNITED STATES MAGISTRATE JUDGE